IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CHIARADONNA | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-CV-1015 |
| | : | |
| ROSEMONT COLLEGE | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                                                      January 31 , 2008

      Plaintiff Michael Chiaradonna ("Plaintiff") brings this action against Defendant Rosemont College ("Defendant" or "Rosemont"), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, et seq. ("PHRA") as well as retaliatory discharge in violation of the public policy of the Commonwealth of Pennsylvania.[1] Now before the Court is Defendant's Motion for Summary Judgment (the "Motion"). For the reasons stated below, the Motion will be granted.

**I.    BACKGROUND**

      Plaintiff was hired by Rosemont in late 2000. See Chiaradonna Dep. 11/21/06, at 60-61. In February 2002, he became Interim Associate Dean for the School of Continuing Studies ("SCS"), and on July 1, 2002, assumed the position of Associate Dean of SCS. See id. Plaintiff was at all times an "at will" employee, and the terms and conditions of his employment were memorialized in Rosemont's Administrative Handbook. See Def.'s Ex. E.

      In late 2004, Plaintiff's immediate superior, Laurie McGarvey, resigned. See McGarvey

---

[1]    Plaintiff has withdrawn his age discrimination claim.

Dep. at 24, 48.  Plaintiff spoke with the President of Rosemont, Ann Amore, about his desire to fill the position of Dean of SCS that had been vacated by McGarvey.  See Chiaradonna Dep. 11/21/06, at 278-79.  On January 10, 2005, Amore announced that the position of Interim Dean would be filled by Debra Klinman.  See Pl.'s Ex. C at 30.

During Plaintiff's tenure at Rosemont, he and other members of the administration had received complaints from staff and students regarding lack of heat at Good Counsel Hall, the building that housed the offices of SCS.  See Chiaradonna Dep. 11/21/06, at 151, 202-11; Connor Dep. at 23-24.  Plaintiff alleges that on January 18 or 19, 2005, he filed a complaint with the Occupational Safety and Health Administration ("OSHA") regarding heating conditions at Rosemont.  See Chiaradonna Dep. 12/11/06, at 243-44.  On January 19, 2005, Plaintiff sent an email entitled "Grave Concern" to senior administrators and the Board of Trustees, complaining about heating conditions at Good Counsel Hall.  Pl.'s Ex. J at 290-91.  In response to the complaint, Butch Brown, Director of Operations, and Fred Connor, Director of Facilities, visited Plaintiff's office.  The parties engaged in a heated discussion.  Plaintiff became loud and angry and used profanity repeatedly.  See Chiaradonna Dep. 12/11/06, at 60, 62-63; Connor Dep. at 64; Brown Dep. at 33, 36-38.  Brown and Connor attempted, unsuccessfully, to calm him down.  See Chiaradonna Dep. 12/11/06, at 66; Brown Dep. at 37.  Mary Stanton, Office Manager of SCS, overheard the first part of the conversation.  She became alarmed, and proceeded to the Human Resources Office to report the incident to Jane Federowicz, a Human Resources manager, and Brenda Duska, Vice President for Finance and Administration.  See Stanton Dep. at 34-37, 41-44.

Upon hearing Stanton's report, Duska began an investigation.  She contacted Brown and

Connor to obtain their accounts of the incident. See Duska Dep. at 17-18. Brown and Connor reported that they entered Plaintiff's office to address his complaint about the heat and were confronted with a verbal tirade. See id.; Brown Dep. at 36-38; Connor Dep. at 68, 81. Stanton, Brown, and Connor were asked to provide a written statement describing the incident. See Def.'s Ex. F at 295, 299-300. Following the incident, Plaintiff called in sick on January 20 and 21, 2005, and again on January 25 and 26, 2005.

On January 24, 2005, Amore, Klinman, Federowicz, and Duska decided to terminate Plaintiff's employment. On January 26, 2005 Plaintiff received a letter from Rosemont advising him that his employment was being terminated as a result of his recent conduct:

> This letter is to inform you that you are being terminated, effective immediately, from your position of Associate Dean of the School of Continuing Studies at Rosemont College.
>
> Based on the circumstance relating to a verbal confrontation that took place on Wednesday, January 19, 2005 with the director of Operations and the Director of Facility Services, we have determined that you engaged in inappropriate behavior. This behavior included loud, insolent, and obscene speech and the creation of a hostile work environment.

See Def.'s Ex. G. On February 10, 2005, Plaintiff contacted Rosemont to inquire about the school's grievance procedures. Pl.'s Ex. R at 236-37. Although the Administrative Handbook required that grievances be filed within a 10-day period following the adverse action, Plaintiff was permitted to submit a grievance to Amore beyond the 10-day deadline. Pl.'s Ex. R at 236. By letter dated March 31, 2005, Amore denied Plaintiff's grievance, stating in relevant part:

> As you know, you were discharged for using obscene language repeatedly while yelling at Butch Brown and Fred Connor. You have tried to explain your frustration but your explanation does not excuse your conduct. Indeed you do not deny the conduct itself.

See Def.'s Ex. I.

## II. LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

**III.   DISCUSSION**

**A.      Discrimination Claim**

Title VII and the PHRA make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of sex. See 42 U.S.C. § 2000e-2(a); 43 Pa. Cons. Stat. § 955(a). The two acts are

substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII. See Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably"). Therefore, the Court will analyze Plaintiff's discrimination claims under Title VII, and the conclusions will apply equally to his claims of discrimination under the PHRA.

In order to establish a prima facie case for discrimination under Title VII, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for a position sought or held; (3) he was discharged from or denied the position; and (4) non-members of the protected class were treated more favorably. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Allegations of gender discrimination against men, known as "reverse discrimination," require the Court to apply a modified burden-shifting analysis that differs slightly from the McDonnell Douglas test. See Iadimarco v. Runyon, 190 F.3d 151, 157-58 (3d Cir. 1999).[2] In order to establish a prima facie case, a plaintiff must adduce "sufficient evidence to allow a fact finder to conclude the employer treated the employee less favorably than others based on sex." Cleary v. CBRL Group, 2007 WL 2212846, at *4 (M.D. Pa. July 31, 2007) (citations omitted). If the plaintiff is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. Id. (citing McDonnell Douglas, 411

---

[2] Men who bring discrimination claims need not show that they are members of a protected class as the first prong of the traditional McDonnell Douglas requires. See Iadimarco, 190 F.3d at 158; Goral v. Pyramid Healthcare, 2008 WL 144201, at *6 (W.D. Pa. Jan. 11, 2008). "[I]t is well settled law that the protections of Title VII are not limited to members of historically discriminated-against groups." Hoskins v. Northwestern Memorial Hosp., 2002 WL 1424562, at *3 (N.D. Ill. June 28, 2002).

U.S. at 802). If the employer proffers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason for the termination is pretextual. Id. The plaintiff must then point to evidence from which a reasonable factfinder could either: 1) disbelieve the employer's alleged nondiscriminatory reason; or 2) believe an invidious discriminatory reason was more likely than not a motivating or determinative cause of his firing. Corbett v. Sealy, Inc., 135 Fed. Appx. 506, 509 (3d Cir. 2005). "If [the plaintiff] offers evidence that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail." Id. (citations omitted); Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995). "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994); see also, e.g., Igwe v. E.I. DuPont de Nemours & Co., 180 Fed. Appx. 353, 356 (3d Cir. 2006).

Plaintiff argues that Rosemont's failure to promote him to the position of Dean and ultimate decision to terminate him were motivated by gender discrimination. In support of his claim, Plaintiff argues that similarly-situated female employees of Rosemont were treated more favorably in the application of both disciplinary procedures and hiring practices.

> i.  *Termination*

Plaintiff argues that a number of similarly-situated female employees who engaged in inappropriate conduct toward others were not terminated by Rosemont. Under Title VII, "to be deemed similarly situated[,] the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." McCann v. City of Philadelphia, 2004 WL 2040410, at *1 (E.D. Pa. Sept. 13, 2004) (quoting Anderson v. Haverford Coll., 868 F. Supp. 741, 745 (E.D. Pa. 1994) (citations omitted)); Atkinson v. Lafayette Coll., 2003 WL 21956416, at *6 (E.D. Pa. July 24, 2003).

Specifically, Plaintiff identifies McGarvey, former Dean of SCS; Rennie Andrews, Vice President of Admissions and Recruiting; and Christine Grose, a former SCS employee. See Pl.'s Opp. at 17-19. Plaintiff alleges that McGarvey "cursed frequently at staff meeting[s]," and "explod[ed]" in front of Rosemont administrators including Brenda Duska, Debra Klinman, Mary Stanton, Jane Federowitz, and faculty members. Chiaradonna Dep. 11/21/06, at 235-37. He further alleges that in the Spring of 2004, McGarvey used inappropriate language when speaking to Connor and Brown. Id. at 236. There is no evidence, however, other than Plaintiff's own testimony, to support the allegation that McGarvey engaged in improper conduct toward others, and no complaints were lodged against her. Indeed, Duska, Klinman, Stanton, Federowitz, Brown and Connor denied ever having witnessed such conduct by McGarvey. See Duska Dep. at 22; Klinman Dep. at 54; Stanton Dep. at 102-03; Federowitz Dep. at 117; Connor Dep. at 51-52; Brown Dep. at 18-19. Thus, McGarvey cannot be deemed similarly situated to Plaintiff. See Solomon v. Soc'y of Auto. Eng'rs, 41 Fed. Appx. 585, 586 (3d Cir. 2002) ("The

District Court correctly rejected [allegations of numerous instances of discrimination] stating that the only evidence in support of these claims was [Plaintiff's] own testimony."); Hawthorne v. Mercer County Children and Youth Servs, 2007 WL 2254565, at *9 (W.D. Pa. Aug. 6, 2007) ("The only basis for this claim is the Plaintiff's own speculative testimony, which is insufficient to overcome a motion for summary judgment").

With respect to Rennie Andrews, Plaintiff refers to a February 2005 incident involving an email sent from Andrews to an SCS faculty member, Laura Princiotta. Andrews Dep. at 61-63. On February 3, 2005, Princiotta sent an email to Amore's secretary to advise that she would be unable to attend a reception honoring Klinman and Andrews. Later that day, Andrews sent an email to a friend, Joanne Demetriou, stating "I will throw a knife or shoot them another time." Because she had attached the email received from Princiotta, a copy of her message was inadvertently sent to Princiotta. Andrews testified that she was "embarrassed" to learn that Princiotta, whom she did not know, received the email, because it was not intended for her. Andrews Dep. at 61-63, 66-67 ("It was not intended. I was embarrassed."). Although Plaintiff argues that the incident was comparable to the one that allegedly led to his termination, the two are distinguishable in a critical respect: while Andrews unintentionally sent an email to an unknown person, Plaintiff does not deny that his conduct toward Connor and Brown was knowing and intentional.

The third individual identified by Plaintiff is Christine Grose, former employee of SCS. Plaintiff alleges that Grose, who had a history of loud and profane outbursts, "was treated far more favorably" than he was. Pl.'s Opp. at 29. Grose was terminated in late February 2002 as a result of "insubordination" and "insolent speech" in violation of Rosemont's Administrative

8

Handbook.  See Pl.'s Ex. FF at 1513.  Plaintiff alleges that "[Grose's] conduct was ... much different than [his] conduct, and she was apparently given a lot of leeway before she was terminated for inappropriate behavior."  Pl.'s Opp. at 29.   Plaintiff's conclusion, however, is unsupported.  The evidence confirms that Grose was promptly discharged after she engaged in verbal altercations with co-workers and supervisors, and behaved in a manner that was perceived to be unprofessional and inappropriate by the administration.  See Pl.'s Ex. FF at 1514.  Contrary to Plaintiff's representation, Grose's termination is an example of a consistent and non-discriminatory application of Rosemont's disciplinary proceedings.  Because there is no competent evidence in the record that Plaintiff was treated less favorably than similarly-situated females, Plaintiff has failed to establish a prima facie case of gender discrimination.  See Hawthorne, 2007 WL 2254565, at *5.

Assuming *arguendo* that Plaintiff has established a prima facie case, his claim nevertheless fails under the McDonnell Douglas burden-shifting analysis because Defendant has demonstrated a legitimate reason for the termination.  Three Rosemont employees, Brown,[3]

---

[3]  Q: Okay.  And he was - his voice was loud?
A: Yes.
Q: Okay.  And he used curse words?
A: Yes.
Q: And as best as you can remember, what do you remember him saying?
A: Well, he just - every other word or every sentence was - the F word was involved in it.
Q: Okay.
A: He was tired of the f'ing administration ... He was tired of the whole f'ing heating system ...
Q: Okay.  And that lasted for 15 minutes or so?
A: 15, 20 minutes, yes.

Brown Dep. at 36-37.

Connor,[4] and Stanton,[5] testified that on January 19, 2005 Plaintiff engaged in a verbal attack that included shouting and repeated use of profanity. Plaintiff acknowledged his conduct during the incident:

> Q: Did you begin to yell or raise your voice?
> A: Yes I did.
> Q: How soon did you begin to yell and raise your voice:
> A: I would say from the onset.
> [ ...]
> Q: Were you cursing?
> A: Yes.
> Q: What curse words did you use?
> A: I used the F word.
> Q: Okay. Did you use the F word once or repeatedly?
> A: Multiple times.

---

[4] Q: Had you ever seen this [type of] eruption of [Plaintiff] that took place on January 19th ... in the past?
A: I had never seen that type of belligerent episode in my almost three years at Rosemont College.

Connor Dep. at 120.

[5] Q: ... at the time that you were having this conversation with Laurie, you were still shaken up from the meeting?
A: Well, I – any time I thought about it, yes, I was.
Q: Why?
A: Well, because of all the screaming and the hollering and [Plaintiff] was very abusive, verbally abusive.
Q: Explain what [Plaintiff] said that you consider to be verbally abusive?
A: Well, he kept using the "F" word every other word...
[...]
Q: Were you fearful for Fred or for Butch?
A: Yes, I was.

Stanton Dep. at 41-43.

See Chiaradonna Dep. 12/11/06, at 59-62.

Plaintiff's conduct was violative of Rosemont's code of conduct, documented in the Administrative Handbook, which expressly prohibits "insolent, obscene, or rude speech," "interfering with work performance of another employee," and "threatening, intimidating or coercing another employee or student." Def.'s Ex. E (Administrative Handbook), Section 8.2. The Handbook specifically warns that such infractions could result in dismissal with or without notice. See id.[6] Because Defendant has articulated a legitimate, non-discriminatory reason for the termination, the burden shifts back to Plaintiff to demonstrate that Defendant's stated reason was pretextual. McDonnell Douglas, 411 U.S. at 805.

In support of his pretext argument, Plaintiff contends that Rosemont provided inconsistent reasons for his termination. Specifically, he alleges that after he filed a claim of gender discrimination with the Unemployment Compensation Board of Review, Rosemont submitted a position statement to the Board containing "information never provided to [Plaintiff] as a basis for his discharge." Pl.'s Opp. at 12. Such information consisted of a representation that

---

[6] The January 19, 2005 incident was not the first time Plaintiff had behaved in an inappropriate manner. Klinman testified that on or about January 11, 2005, after assuming the position of interim dean of SCS, she held a meeting in order to introduce herself to the staff. During the meeting, Plaintiff behaved in a manner that Klinman described as unprofessional and inappropriate. See Klinman Dep. at 68-71 ("he essentially told me that I was simply wasting his time, that he was sick and tired of the administration, that there was no point telling me what the administration already knew ... his tone was unprofessional. It was hostile. It was edgy ... I could tell that other people in the room were uncomfortable ..."). McGarvey also testified that Plaintiff had behaved inappropriately toward her during a staff meeting, and that she found his conduct to be verbally threatening. See McGarvey Dep. at 45-48 ([Plaintiff] started to get very agitated and [stood] up and started pointing ... he was very angry with me in front of the staff. And it was demeaning."). McGarvey emailed Amore to report the incident, stating "Ann, he is having a meltdown." Id. at 45.

Rosemont's administrators were concerned that Plaintiff was a threat to the staff and students and that he may become more violent. See id. at 13. Plaintiff argues that because he was told that his termination stemmed from his misconduct on January 19, 2005, Rosemont's reference to safety concerns constituted an inconsistency giving rise to an inference of pretext. The Court disagrees. Plaintiff's volatile conduct on January 19, 2005 may have given rise to legitimate concerns about the safety of students and staff, and his subsequent termination is fully consistent with Rosemont's stated intention to avoid the creation of a hostile work environment and to ensure the safety of staff and students. Rosemont's safety concerns were particularly legitimate in light of the statements of Stanton, Connor, and Brown, all of whom testified that they found Plaintiff's conduct threatening. See Stanton Dep. at 94-95 ("Q: [were you] afraid of Michael? A: Yeah, because I didn't know what he was going to do, he was out of control."); Connor Dep. at 81 ("his stance and his manner was threatening"); Brown Dep. at 38 ("Q: Did you at any point think that he was going to become violent toward you? A: Yeah.").[7]

Plaintiff quarrels with the accounts of the incident given by Stanton and Brown, arguing that although Stanton testified that she reported the incident, she did not "formally complain" as Rosemont represented. See Pl.'s Opp. at 20. Plaintiff further argues that Brown's testimony that he felt threatened by Plaintiff's conduct is contradicted by the statement he provided to Rosemont in the aftermath of the January 19, 2005 incident. Minor variations in these individuals' accounts of their subjective reactions to Plaintiff's conduct do not alter the fact that Rosemont has

---

[7] After his termination, Plaintiff sent a series of emails to various Rosemont staff, students and faculty members complaining about the administration. He also sent email messages to institutions with whom Rosemont had contractual relationships, such as the Children's Hospital of Philadelphia. See Chiaradonna Dep. at 274-84. When asked about the purpose of one of the messages, Plaintiff testified: " I was showing my insolence." Id. at 282.

12

consistently stated that Plaintiff was terminated as a result of his inappropriate conduct on January 19, 2005.  Plaintiff has failed to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765.  Although Rosemont's decision to terminate Plaintiff was a harsh response to a verbal outburst, there is no competent evidence in the record that discrimination was more likely than not a motivating or determinative cause of Defendant's actions.  Id. ("plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."); Magnusson v. The Hartford, 2007 WL 4395645, at *2 (3d Cir. Dec. 14, 2007) ("It is not enough to show that the termination was wrong or unfair. The evidence must allow a reasonable juror to conclude that the Defendants were motivated by discriminatory intent.").  Accordingly, summary judgment will be granted in Defendant's favor on the discrimination claim.  See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992) ("A plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, this Court will not interfere in an otherwise valid management decision.")

ii.     *Failure to Promote*

Plaintiff alleges that after McGarvey resigned in December 2004, he applied for the position of Dean that she had vacated.  Plaintiff testified that Amore told him that he was qualified for the position because he had been Associate Dean for three years, the faculty enjoyed him, the students loved him, and he had done a great job.  Chiaradonna Dep. 12/11/06, at 250.

However, on January 10, 2005, Plaintiff learned that Debra Klinman would be appointed Interim Dean of SCS. Chiaradonna Dep. 11/21/06, at 275-78. Plaintiff alleges that Defendant's decision not to promote him was motivated by gender bias, and that both McGarvey and Klinman had been treated more favorably. See Pl.'s Opp. at 26-27. Specifically, Plaintiff alleges that McGarvey and Klinman were hired without a formal search or competitive process. See id.

Plaintiff's claim fails because he is unable to demonstrate that he was treated less favorably than similarly-situated women. See Hawthorne, 2007 WL 2254565, at *8. It is undisputed that in late 2004, Plaintiff's relationship with McGarvey, the outgoing Dean, deteriorated. See McGarvey Dep. at 34-37; Chiaradonna Dep. 12/11/06, at 235. McGarvey testified that she informed Plaintiff that she could not recommend him for the position. McGarvey also advised Amore that she would not recommend Plaintiff, and instead recommended another candidate, Craig Loundis, as her replacement. See McGarvey Dep. at 34-37. Plaintiff has not identified any other candidate who lacked the endorsement of a direct superior, a significant differentiating factor.[8] Because he has failed to adduce evidence sufficient to support a prima facie case, summary judgment will be granted in Defendant's favor with respect to Plaintiff's claim for failure to promote. See Kimble v. Morgan Properties, 241 Fed. Appx. 895, 898 (3d Cir. 2007); Kuzdrowski v. Nicholson, 2006 WL 3053460, at *7 (W.D. Pa. Oct. 25, 2006).

---

[8] Plaintiff has not identified the individuals with whom he was competing for the position or their respective qualifications. See Chiaradonna Dep. 12/11/06, at 245-46. Debra Klinman, who became Interim Dean of SCS in January 2005, held a doctoral degree, while Plaintiff held a Master's degree. The search committee in charge of identifying candidates for the position of Dean recommended Fred Loomis, PhD. Loomis eventually withdrew his candidacy, and the position was offered to Mary Sortino, PhD. See Klinman Dep. at 140-47.

**B.     Retaliation Claim**

Plaintiff alleges that he was terminated in retaliation for filing a complaint with OSHA regarding lack of heat at Rosemont.  As a narrowly-drawn exception to the presumption that an employee is employed "at will" and may be terminated at any time with or without cause, wrongful discharge claims "are actionable in Pennsylvania where the termination of an employee would violate a clear mandate of public policy." Wetherhold v. Radioshack Corp., 339 F. Supp. 2d 670, 673 (E.D. Pa. 2004) (citations omitted).[9]  The Wetherhold Court recognized that "the public policy of the Commonwealth is still implicated, undermined or violated, if an employee files a complaint with OSHA and, in retaliation for that complaint, his employment is terminated." 339 F. Supp. 2d at 683 (citing McLaughlin v. Gastrointestinal Specialists, 750 A.2d 283, 289 (Pa. 2000)).

Although Plaintiff asserts that he filed the complaint electronically on January 18 or 19, 2005, he has provided no documentary evidence of such a submission.[10]  In support of his claim, Plaintiff alleges that Rosemont's IT Director, Dan Mason, accessed his computer on January 15, 2005, and "backed up" the data into Rosemont's network server.  See Plaintiff's Sur-Reply Brief, at 2-3.  Plaintiff further alleges that on January 13, 2005, he and his wife had an email discussion regarding his intent to file a complaint with OSHA, and that knowledge of the email may be imputed to Rosemont as a result of Mason's actions.  See Pl.'s Ex. L, at 2004-2005.

---

[9]     Plaintiff relies on two statutes, the Pennsylvania Health and Safety Law, 43 Pa. Cons. Stat. § 25-3, and the Pennsylvania Worker and Community Right to Know Act ("PWCRA"), 35 Pa. Cons. Stat. § 7319(b).

[10]    Plaintiff has produced documents revealing that he contacted OSHA on February 9, 2005.  See Def.'s Ex. S.

Plaintiff's argument that Rosemont had constructive notice of his alleged complaint to OSHA, however, is based on a mischaracterization of Mason's deposition testimony. When asked when he accessed Plaintiff's computer, Mason initially provided the date of January 15, 2006. See Mason Dep. at 23-24. He then swiftly acknowledged that he did not recall the exact date. Id. at 25. Upon further questioning, Mason recalled that he accessed Plaintiff's computer on the Saturday before the termination – January 22, 2005:

> Q: That Saturday you went in to back up the files, do you know if [Plaintiff] was shortly discharged after that next week? [...]
> A: It was the next week. I was in the Saturday before the termination.
> Q: Okay. So whenever the termination was, it was that weekend before the termination?
> A: Mm-hmm.
> Q: Do you know that for sure?
> A: Yes.
> Q: How do you know that it was the Saturday before the termination?
> A: Because of my exchanges with Jane Federowicz, her asking me to do the backup and then, later in the week, asking me to disable the computer.
> Q: You remember clearly in your mind it was Friday to a Wednesday instead of two Fridays back?
> A: Oh, yes, I do, yeah, yeah.

Mason Dep. at 57-58. Mason's testimony was consistent with the testimony of Jane Federowitz of Human Resources. Federowitz testified that on Friday, January 21, 2005, she participated in a telephone conference with Brenda Duska and Debra Klinman to discuss the January 19, 2005 incident. In the course of the conference, it was determined that Plaintiff had committed a serious violation of Rosemont's code of conduct, and that his computer should be backed up over the weekend. See Federowicz Dep. at 96-97, 111-113, 124.

Plaintiff's argument that Rosemont was aware of his alleged complaint to OSHA is

16

further refuted by Mason's testimony that while backing up his computer files, he did not review Plaintiff's emails or any other documents:

> Q: Tell us physically what you did, how do you transfer the files or back it up?
>
> A: I turn the computer on, I log in as Administrator ... Then, I copy the files from the profile ... Then, I break the connection, Then, I log off the machine.
>
> [...]
>
> Q: How long a process does it take for you to back up that file?
>
> A: On the average, it's maybe five minutes.
>
> Q: Do you review any records or any of the actual substance of what is in those files or the documents themselves?
>
> A: No.

Mason Dep. at 49-50.  Indeed, Plaintiff testified during his deposition that he knew of no one at Rosemont who had been aware of his alleged OSHA complaint ("Q: To this day, do you know of anybody [at Rosemont] who knew you had filed a complaint with OSHA? A: I do not.  Q: Any other reason or any other fact upon which you believe that you were discharged because you were raising a problem or potential problem with heating? A: No." Chiaradonna Dep. 12/11/06, at 244).  Plaintiff has thus failed to demonstrate that he filed a complaint with OSHA on or about January 18, 2005, and has further failed to demonstrate that Defendant was on notice of any such complaint.  As there is no competent evidence in the record that would support a reasonable factfinder's conclusion that Defendant's decision to terminate him was motivated by retaliatory animus, summary judgment will be granted with respect to the retaliation claim.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted as to all claims.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CHIARADONNA | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-CV-1015 |
| | : | |
| ROSEMONT COLLEGE | : | |

## ORDER

**AND NOW**, this 31ST day of January, 2008, upon consideration of Defendant's Motion for Summary Judgment (docket no. 22), and all responses thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**.  It is **FURTHER ORDERED** that the Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:


 S/ BRUCE W. KAUFFMAN
 BRUCE W. KAUFFMAN,  J.